FILED
2021 Jul-20  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **RONALD SELLERS, as assignee of GARY GARDNER & GARY GARDNER BUILDERS, INC.,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No. 2:15-cv-957-KOB** ) |
| **NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,** | ) ) ) ) |
| **Defendant.** | ) |

**<u>MEMORANDUM OPINION</u>**

Over the course of the past thirteen years, this insurance coverage dispute has wound its way through three separate lawsuits across both the federal and Alabama state courts. During the course of those three cases, this coverage dispute has been the subject of a declaratory judgment, a settlement and subsequent assignment, a consent judgment, a trial, and an opinion from the United States Court of Appeals for the Eleventh Circuit. But now, this dispute has boiled down to one final question: are Ronald Sellers and Gary Gardner in "privity" for preclusion purposes under Alabama law such that this court should give preclusive effect to a finding of no coverage in a prior declaratory judgment action?

Because the court finds the answer to that question to be "yes," Nationwide is not obligated to pay the consent judgment Sellers/Gardner obtained against Steve Durham, Nationwide's insured. Accordingly, the court will **GRANT** Nationwide's motion for summary judgment (doc. 98) and will **ENTER SUMMARY JUDGMENT** in favor of Nationwide and against Sellers/Gardner.

1

## I.        Factual and Procedural Background

Both this court and the Eleventh Circuit have discussed the facts of this case at length. *See, e.g.*, (docs. 24; 79); *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1269–72 (11th Cir. 2020). But because the Eleventh Circuit directed this court to "apply Alabama's rules of issue preclusion to determine the issue of privity in the first instance," and because "whether a party is in privity with another for preclusion purposes is a question of *fact*," the court will narrate the facts to provide clarity for its fact-intensive reasoning and conclusion. *Sellers*, 968 F.3d at 1275–76 (quoting *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010)) (emphasis added).

The events underlying this case began in 2004, when Ronald and Kimberly Sellers hired Gary Gardner and Gardner Builders, Inc. to construct their new home. (Doc. 1-1 at 5). Gardner[1] in turn hired Steve Durham, d/b/a S. Durham Contracting, to lay the new home's foundation. (Doc. 1-1 at 4). Nationwide insured Durham pursuant to a Contractors Policy with a policy period running from December 20, 2006 to December 20, 2007. (Doc. 98-6 at 4).

Unfortunately for everyone involved, Durham did a shoddy job on the foundation of the Sellerses' home. And his poor work damaged other parts of the Sellerses' home, too—the Sellerses noticed construction defects in the house at some point after their June 2005 move-in. (doc. 1-1 at 5). So, on June 13, 2008, the Sellerses tipped over the first domino in this dispute by filing suit against Gardner and Durham in Alabama state court. (Doc. 98-4 at 2). In August 2009, Gardner filed various negligence- and warranty-based cross-claims against Durham. (Doc. 98-5 at 2–6).

---

[1] This court—as did the Eleventh Circuit—will refer to Gary Gardner and Gardner Builders, Inc. collectively as "Gardner." *Sellers*, 968 F.3d at 1269.

In July 2011, Nationwide filed a declaratory judgment action in the United States District Court for the Northern District of Alabama against Durham and the Sellerses, invoking the court's diversity jurisdiction and seeking a declaration that it owed no duty to defend or indemnify Durham for any claim arising out of the faulty foundation he built for the Sellerses' home. (Doc. 98-7). Importantly, Gardner—the general contractor—was not a party to the declaratory judgment action.

Meanwhile, in October 2011, Gardner and the Sellerses reached a settlement in the underlying state court action. (Doc. 98-8). Gardner paid the Sellerses $100,000 and—very importantly for this case—assigned all of his claims against Durham arising out of the construction of the home's foundation to Ronald Sellers. (Doc. 98-9). After the assignment, the Sellerses amended Gardner's cross-claims against Durham in the underlying state court action in November 2011 to include claims for breach of contract, indemnity, and unjust enrichment. (Doc. 98-10 at 2–8).

In January of 2012, Nationwide filed a motion for summary judgment in the declaratory judgment action. (Doc. 10 in 2:11-CV-2581-RBP). That motion went under submission in March 2012. (Doc. 14; 15 in 2:11-CV-2581-RBP). And in August of 2012, Magistrate Judge Paul W. Greene issued his Report and Recommendation (doc. 98-3) in the declaratory judgment action, which United States District Judge Robert B. Propst accepted and adopted. (Doc. 98-12).

In his Report and Recommendation, Magistrate Judge Greene recommended that Judge Propst enter summary judgment for Nationwide because, *inter alia*, no reasonable jury could conclude that the damage to the Sellerses home "manifested" during the policy period. (Doc. 98-3 at 23–25). Judge Propst entered final judgment in favor of Nationwide and against the Sellerses and Durham on August 27th, 2012. (Doc. 98-12).

Notably, Nationwide received a default declaratory judgment against Durham, as Durham did not litigate the issue of coverage in the declaratory judgment action. (Doc. 98-3 at 15). In a footnote, Judge Greene noted that "[a] default declaratory judgment *solely against an insured* does not preclude a party who might later prevail in an action against that insured from later seeking to bring an action against the insurer to collect the policy proceeds. (Doc. 98-3 at 15 n.8) (citing Ala. Code § 27-23-2; *McDaniel v. Harleysville Mut. Ins. Co.*, 84 So. 3d 106, 112–13 (Ala. Civ. App. 2011)) (emphasis added). Again, Gardner was not a party to the declaratory judgment action.

A little over a year later, in October 2013, the Sellerses and Sellers/Gardner[2] entered into a consent judgment with Durham in the underlying state court action. (Doc. 98-1). Under the terms of the consent judgment, the state court entered judgment against Durham and in favor of Sellers/Gardner for $250,000. (Doc. 98-1 at 4). Sellers/Gardner, however, agreed to only seek to collect the judgment from Nationwide under Alabama's "direct action" statute; *see* Ala. Code § 27-23-2; and agreed to forgo executing the judgment on Durham, who at that point had filed for bankruptcy. (Doc. 98-1 at 4–5). In fact, in August 2010—two years before the consent judgment—the bankruptcy court allowed the Sellerses to proceed against Durham in the underlying state court action "to the extent of available insurance benefits only." (Doc. 13-4 at 2).

Looking to collect on the judgment against Durham from Nationwide, Sellers/Gardner filed this lawsuit on May 12, 2015 in Alabama state court. (Doc. 1 at 1). As contemplated by the consent decree and by the bankruptcy court's order, Sellers/Gardner brought one claim under Alabama's direct action statute to collect the $250,000 consent judgment against Durham from

---

[2] This court—as did the Eleventh Circuit—will refer to Mr. Sellers *in his capacity as assignee of Gardner* as "Sellers/Gardner." *See Sellers*, 968 F.3d at 1270.

Nationwide. (Doc. 1-1 at 7). Nationwide subsequently removed the case to this court. Then, in November of 2016, Nationwide filed a motion for summary judgment. (Doc. 13). Nationwide argued that Judge Greene's decision should have preclusive effect on this case, but it raised that argument for the first time in its reply brief. (Doc. 24 at 11). Accordingly, the court refused to consider the argument. *See Dates v. Frank Norton, LLC*, 190 F. Supp. 3d 1037, 1040 (N.D. Ala. 2016) (citing *Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)) ("new arguments are improper if presented for the first time in a reply brief"). But the court—in *dicta*— opined that Judge Greene's ruling would not have preclusive effect on this case because Gardner was not a party to the declaratory judgment action. And the court grounded that *dicta* in *federal* law, not Alabama law. (Doc. 24 at 11–14).

So the case proceeded to trial. But before trial, Nationwide filed a motion *in limine* in which it argued that Judge Greene's decision in the declaratory judgment action should preclude Sellers/Gardner from attempting to introduce any evidence as to when the damage to their house "manifested" for the purposes of the Nationwide policy, because Judge Greene concluded that the damage "manifested" before the policy period. (Doc. 63 at 2). But the court denied Sellers/Gardner's motion *in limine* without prejudice "because it raised a new, substantive legal question on the eve of trial without an opportunity for both sides to fully brief the issue and for the court to consider the…issue[.]" (Doc. 79 at 5).

At trial, the jury concluded (1) that "Mr. Durham's faulty workmanship caused property damage to parts of Mr. Sellers' home[;]" and (2) that "the property damage caused by Mr. Durham's work manifest[ed] between December 20, 2006, and December 20, 2007[.]" (Doc. 76). After the jury verdict, Nationwide moved the court to reconsider its ruling on the motion *in*

*limine* as to the preclusive effect of Judge Greene's ruling that the damage to the Sellerses' home manifested before the policy period. (Doc. 77).

The court granted the motion to reconsider and concluded that it should not have declined to consider the motion *in limine* only because it raised a new legal issue on the eve of trial. (Doc. 79 at 8). The court denied Nationwide's motion on the merits, however, and concluded that because *Gardner* was not a party to the declaratory judgment action, *Sellers, as Gardner's assignee*, could not be bound by Judge Greene's decision in the declaratory judgment action between Nationwide and the *Sellerses individually*. (Doc. 79 at 12). Importantly, however, the court applied the *federal* law of issue preclusion in finding that Judge Greene's decision had no preclusive effect on this case.

So, on February 6, 2019, this court entered final judgment in favor of Sellers/Gardner and against Nationwide in the amount of $250,000. (Doc. 89).

Nationwide appealed this court's denial of its motion *in limine* and its denial on the merits of its motion to reconsider to the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit vacated the jury's verdict because it found this court applied the law of the incorrect legal system in ruling on the merits of the motion *in limine*. *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1269 (11th Cir. 2020).

The Eleventh Circuit pointed out that in the declaratory judgment action, the district court exercised *diversity jurisdiction*; when a litigant seeks to give preclusive effect to a ruling from a federal court that exercised diversity jurisdiction, the court faced with the preclusion question must apply "the rules of issue preclusion from the State in which the rendering court sat—in this case, Alabama." *Sellers*, 968 F.3d at 1273. The Eleventh Circuit pointed out that Alabama law allows prior judgments to bind those who were not parties to the prior action, so long as the party

6

against whom preclusion is asserted is in "privity" with a party to the prior action. *Sellers*, 968 F.3d at 1274 (quoting *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990)).

So the Eleventh Circuit remanded for this court "to apply Alabama's rules of issue preclusion to determine the issue of privity in the first instance." *Sellers*, 968 F.3d at 1275 (citing *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017)). Nationwide filed a renewed motion for summary judgment (doc. 98) raising the preclusion issue, to which Sellers/Gardner filed a response. (Doc. 100). Nationwide filed its reply (doc. 101) to Sellers/Gardner's response, so Nationwide's motion is now ripe for the court's review.

## II.    Summary Judgment Standard

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party to defeat the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *Id.* at 255.

Furthermore, the court must view all evidence and inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both sides have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## III.    Analysis

As explained above, Mr. Sellers, *as Gardner's assignee* (Sellers/Gardner) brings one count against Nationwide in this case: a claim to collect on the consent judgment between Sellers/Gardner and Durham under Alabama's "direct action" statute, Ala. Code § 27-23-2. Under the direct action statute, a "judgment creditor [here, Sellers/Gardner] shall be entitled to have the insurance money provided for in the contract of insurance between the insurer [Nationwide] and [the insured, Durham] applied to the satisfaction of the judgment[.]"

In the declaratory judgment action brought by Nationwide against the Sellerses and Durham, Judge Greene found that Durham had no coverage under his Nationwide policy because the damage his faulty foundation caused to the Sellerses' home did not "manifest" during the

8

policy period. Nationwide primarily seeks to give that finding preclusive effect in this case—which would bar Sellers/Gardner's recovery—even though Gardner was not a party to the declaratory judgment action. But the parties also raise other arguments that the court will briefly address before reaching Nationwide's preclusion argument.

The parties spent many pages of their briefs sparring over the effect *on this case* of Sellers/Gardner's cross-claims against Durham in the *underlying state court case*. Nationwide, for instance, argues that Sellers/Gardner cannot recover damages for his breach of contract and breach of warranty cross-claims against Durham because those claims involve purely "economic" damage and because Durham's Nationwide policy only provided coverage for property damage and bodily injury caused by an "occurrence." (Doc. 98 at 21–24) (citing *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 248 (Ala. 1995) for the proposition that Durham's Nationwide policy does not cover "[p]urely economic losses").

For his part, Sellers/Gardner argues that the *declaratory judgment action* cannot have preclusive effect on this case because that action did not in any way resolve Sellers/Gardner's cross-claims against Durham *in the underlying state court case*. (Doc. 100 at 21–22).

Both parties overestimate the effect Sellers/Gardner's cross-claims in the underlying state court action have on this case. Under Alabama's direct action statute, an injured party, like Sellers/Gardner here, "can bring an action against the insurer [Nationwide]…only if the insured [Durham] *was covered against the loss or damage* at the time the inured party's right of action arose against the insured tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Brown*, 894 So. 2d 643, 648 (Ala. 2004) (quoting *Maness v. Ala. Farm Bureau Mut. Cas. Inc. Co.*, 416 So. 2d 979, 981–82 (Ala. 1982), *declined to extend on other grounds by Woodall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369, 373 (Ala. 1995)) (emphasis added).

And the Nationwide policy only provides coverage to Durham if the property damage caused by an "occurrence"—here, damage to the Sellerses' home resulting from Durham's faulty foundation—"manifested" during the policy period. (Doc. 98-6 at 16). Judge Greene found that the damage to the Sellerses' home did not "manifest" during the policy period. (Doc. 98-3 at 24). So if the court gives preclusive effect to Judge Greene's finding that the damage to the Sellerses home "manifested" outside of the policy period, then Durham necessarily was not covered against the damage to the Sellerses' home, so Sellers/Gardner will not be able to recover under the direct action statute, *all other issues notwithstanding*.

Under Alabama law, for example, a breach of contract or breach of warranty *may* constitute an "occurrence" for purposes of policy language similar to that of Nationwide's policy, so long as the breach of contract or warranty actually caused bodily injury or property damage. *See, e.g.*, *Penn. Nat'l Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173, 1179 (11th Cir. 2015) (interpreting Alabama law and finding that a breach of contract may constitute an "occurrence" so long as the breach of contract resulted in property damage). But even if Durham's breach of contract or breach of warranty constitutes an "occurrence" for purposes of the Nationwide policy, Sellers/Gardner will not be able to recover *on any of his claims* if this court gives Judge Greene's finding on the "manifestation" issue preclusive effect.

And Sellers/Gardner's argument that the existence of his cross-claims in the underlying state court case prevents the declaratory judgment action from having preclusive effect on this case likewise fails. In arguing that the declaratory judgment action did not resolve his cross-claims against Durham, Sellers/Gardner defines the "issue" for issue preclusion purposes too broadly. Nationwide asks this court to give preclusive effect to Judge Greene's finding that Nationwide's policy did not cover Durham's faulty work because the damage to the Sellerses'

home "manifested" outside of the policy period. (Doc. 98 at 24). As explained above, if this court gives preclusive effect to that finding, Nationwide will have no obligation to satisfy a judgment on *any claim* arising out of Durham's faulty foundation. Although Sellers/Gardner's cross-claims against Durham in the underlying state court action may well present issues that the declaratory judgment action did not address, the "manifestation" question provides an *independent* issue upon which this court may properly perform preclusion analysis.

### i.      Alabama Law of Issue Preclusion

Having addressed the parties' preliminary arguments, the court will now determine whether to give Judge Greene's finding as to "manifestation" preclusive effect in this case. And as directed by the Eleventh Circuit, the court will apply Alabama's law of issue preclusion.

Alabama law precludes the parties to an action from relitigating an issue that was resolved in a prior action if (1) the issue in the current suit is "identical to the one litigated in the prior suit;" (2) the parties "actually litigated [that issue] in the prior suit;" (3) the "resolution of that issue was necessary to the prior judgment;" and (4) "the same parties" were before the court in the prior case. *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990) (quoting *Pierce v. Rummell*, 535 So. 2d 594, 596–97 (Ala. 1988)). But as explained by the Eleventh Circuit, under Alabama law "the 'same parties' requirement is not strictly enforced if the party raising the defense of collateral estoppel, or the party against whom it is asserted, is in privity with a party to the prior action." *Dairyland*, 566 So. 2d at 726 (citing *Constantine v. U.S. Fid. & Guar. Co.*, 545 So. 2d 750, 756 (Ala. 1989)).

And "'[p]rivity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Jim Parker Bldg.*

*Supply Co. v. G&S Glass & Supply Co.*, 69 So. 3d 124, 132 (Ala. 2011) (quoting *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir. 2004)). As such, "[t]he term 'privity' has not been uniformly defined with respect to…collateral estoppel;" rather, it "has generally been resolved on an *ad hoc* basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment." *Stewart v. Brinley*, 902 So. 2d 1, 10 (Ala. 2004) (quoting *Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 821 So. 2d 158, 165 (Ala. 2001)) (internal quotation marks and alterations omitted).

However, "[p]rivity is often deemed…to arise from (1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; or (3) an identity of interest in the subject matter of litigation." *Stewart*, 902 So. 2d at 11 (quoting *Leon C. Baker*, 821 So. 2d at 165) (internal quotation marks and alterations omitted). The third circumstance, the existence of an "identity of interest" between the party to be bound and a party to the prior suit, represents the only possible grounds for a finding of privity in this case. And the Alabama courts have found privity under the third circumstance—an identity of interests between the party against whom preclusion is asserted and a party to the prior suit—as long ago as 1853. *Dairyland*, 566 So. 2d at 726 (citing *Winston v. Westfeldt*, 22 Ala. 760, 771 (1853)).

For the reasons explained below, the court will give Judge Greene's finding as to the "manifestation" issue preclusive effect in this case. Accordingly, because Nationwide's policy did not cover Durham for the damage he caused to the Sellerses' home, Sellers/Gardner cannot recover under the direct action statute. *See State Farm Mut. Auto. Ins. Co. v. Brown*, 894 So. 2d 643, 648 (Ala. 2004) (quoting *Maness v. Ala. Farm Bureau Mut. Cas. Inc. Co.*, 416 So. 2d 979,

981–82 (Ala. 1982), *declined to extend on other grounds by Woodall v. Alfa Mut. Ins. Co.*, 658
So. 2d 369, 373 (Ala. 1995)).

### ii.    Identical, Actual Litigation, and Necessity

The court concludes that in the declaratory judgment action, the Sellerses and Nationwide
actually litigated an issue identical to one in this case that was necessary to Judge Greene's
finding of no coverage under the Nationwide policy.

First, the "manifestation" issue is identical between this suit and the declaratory judgment
action. In the declaratory judgment action, the Sellerses were required to prove that the damage
to their home "manifested" during the policy period to establish that the Nationwide policy
covered the damage Durham's shoddy foundation did to their home. And here, because
Sellers/Gardner can only recover against Nationwide under the direct action statute if Durham
actually had coverage, Sellers/Gardner must also prove that the damage to the Sellerses' home
"manifested" during the policy period. Accordingly, identicality of the issues exists between this
case and the declaratory judgment action.

The court also concludes that the "manifestation" issue was "actually litigated" in the
declaratory judgment action. Nationwide argued in its summary judgment brief in the declaratory
judgment action that the damage to the Sellerses' home did not "manifest" during the policy
period. (Doc. 10 at 22–24 in Case No. 2:11-CV-02581-RBP). And Nationwide pointed to
evidence in the record in support of this proposition. The Sellerses, in opposition to Nationwide's
motion for summary judgment in the declaratory judgment action, argued that the damage to
their home *did* "manifest" during the policy period and likewise cited evidence from the record
in support of their argument. (Doc. 13 at 9–10).

Sellers/Gardner argues that the issue was not "actually litigated" in the declaratory judgment action because Nationwide obtained a default judgment against Durham. And under Alabama law, "an issue has not been actually litigated in a prior action if that *action* was resolved by a default judgment." *McDaniel v. Harleysville Mut. Ins. Co.*, 84 So. 3d 106, 112 (Ala. Civ. App. 2011) (citing *AAA Equip. & Rental, Inc. v. Bailey*, 384 So. 2d 107, 112 (Ala. 1980)) (emphasis added). But this argument fails because the declaratory judgment *action* was *not* resolved by a default judgment. True, Judge Propst entered default judgment against *Durham*, but entered *summary judgment* against the Sellerses and in favor of Nationwide because Judge Greene found that the damage to their home did not manifest during the policy period. (Doc. 98-13 at 2; doc. 63-1 at 25). Accordingly, the "manifestation" issue was "actually litigated" in the declaratory judgment action.

Finally, Judge Greene's determination that the damage to the Sellerses' home did not "manifest" during the policy period was necessary to his judgment of no coverage in the declaratory judgment action. For issue preclusion purposes, an issue is "necessary" to the prior judgment where the court in the prior action states its grounds for decision and could not have reached the same conclusion on other independent grounds. *See, e.g., Amoco Prod. Co. v. White*, 453 So. 2d 358, 360 (Ala. 1984) (no "necessity" for preclusion purposes where "[a]ny of [four] grounds alleged by the [plaintiffs in the prior action] could have supported the judgment, without any determination of the remaining grounds"); *Fisher v. Space of Pensacola, Inc.*, 461 So. 2d 790, 793 (Ala. 1984) (no "necessity" for preclusion purposes where jury did not state the reason for its finding in favor of defendant; jury could have reached that conclusion on multiple grounds).

In the declaratory judgment action, Judge Greene made three determinations. First, he determined that any damage to the Sellerses' *foundation alone* was not covered under the Nationwide policy's definition of an "occurrence." (Doc. 63-1 at 19–20). He alternatively concluded that the Nationwide policy's "Your Product" and "Your Work" exclusions applied to bar coverage for any damage to the Sellerses' *foundation alone*. (Doc. 63-1 at 22).

But Judge Greene determined that the Nationwide policy did not cover the other damage *to the Sellerses' home itself* on only one ground: that the damage to the home did not "manifest" during the policy period. (Doc. 63-1 at 22–24). Accordingly, because Judge Greene stated his grounds for deciding that the Nationwide policy did not cover the damage to the Sellerses' home itself, and because he could not have reached that conclusion on other independent grounds, Judge Greene's finding on the "manifestation" issue was necessary to the judgment in the declaratory judgment action. *See Amoco Prod. Co. v. White*, 453 So. 2d 358, 360 (Ala. 1984).

In sum, Nationwide has satisfied the first three elements of issue preclusion—that in the declaratory judgment action, the Sellerses and Nationwide actually litigated an issue identical to one in this case that was necessary to the judgment in the declaratory judgment action. Accordingly, even though Gardner was not a party to the declaratory judgment action, Nationwide will be entitled to summary judgment against Sellers/Gardner in this case on issue preclusion grounds *if* the Sellerses and Gardner are in "privity" for preclusion purposes. *See Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990).

### iii.  Identity of Parties: Privity

As explained above, "the requirement that the parties be identical [in the two proceedings for preclusion purposes] may be satisfied by less than a perfect identity of the parties in the first and second action, as when particular parties are in privity." *Jim Parker Bldg. Co. v. G & S*

15

*Glass & Supply Co.*, 69 So. 3d 124, 132 (Ala. 2011) (quoting *Ex parte Flexible Prods. Co.*, 915 So. 2d 34, 48 (Ala. 2005)) (internal alterations omitted). And as explained by the Eleventh Circuit, "Alabama's expansive definition of privity includes not only a successive interest to the same property right, but also an identity of interest in the subject matter of the litigation." *Hunter v. City of Leeds*, 941 F.3d 1265, 1274 (11th Cir. 2019) (quoting *Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 821 So. 2d 158, 165 (Ala. 2001)) (internal quotation marks omitted).

To define privity another way, "[a] person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is *so closely aligned with his interests as to be his virtual representative*." *Greene v. Jefferson Cnty. Comm'n*, 13 So. 3d 901, 912 (Ala. 2008) (quoting *Gonzalez, LLC v. DiVincenti*, 844 So. 2d 1196, 1203 (Ala. 2002)) (internal quotation marks omitted) (emphasis added).

The court concludes that Gardner is in privity with the Sellerses for preclusion purposes because Gardner and the Sellerses shared an identical interest in the subject matter of the declaratory judgment action: both the Sellerses and Gardner wanted to establish that the Nationwide policy covered the damage Durham's faulty foundation caused to the Sellerses' home, so both the Sellerses and Gardner wanted a finding that the damage to the home "manifested" during the policy period.

Although the parties have not identified, and the court has not located, any cases interpreting Alabama law that found privity between two *injured parties*, other cases where courts have—and have not—found privity are instructive.

First, in *Jim Parker Building Company v. G & S Glass & Supply Company*, the Alabama Supreme Court found privity between a surety company and a general contractor in an action for

16

payment brought by a subcontractor against the surety company. 69 So. 3d 124, 127–28, 132 (Ala. 2011). The court found privity based on identity of interests between the surety company and the general contractor because those two parties would be jointly and severally liable for any judgment the subcontractor obtained against either of the two parties. *Jim Parker*, 69 So. 3d at 132. Accordingly, the general contractor and surety company "*would benefit equally* from a determination that" the subcontractor was not entitled to recover compensation. *Jim Parker*, 69 So. 3d at 132 (emphasis added).

Here, the Sellerses and Gardner, like the surety company and the general contractor in *Jim Parker*, would benefit equally from a determination that the damage to the home "manifested" during the Nationwide policy period, because both the Sellerses and Gardner could only collect from Nationwide under the policy pursuant to such a finding. *See* 69 So. 3d at 132. Accordingly, the Sellerses' interest in the declaratory judgment action were so closely aligned with Gardner's as to make them his "virtual representative[s]." *See Greene v. Jefferson Cnty. Comm'n*, 13 So. 3d 901, 912 (Ala. 2008) (quoting *Gonzalez, LLC v. DiVincenti*, 844 So. 2d 1196, 1203 (Ala. 2002)).

The Alabama Court of Civil Appeals' decision in *McDaniel v. Harleysville Mutual Insurance Company* provides more context for the court's conclusion. 84 So. 3d 106 (Ala. Civ. App. 2011). In *McDaniel*, the plaintiff homeowners, like the Sellerses in this case, filed suit against a homebuilder's insurer to collect on a judgment entered in their favor and against the homebuilder in a prior case. *McDaniel*, 84 So. 3d at 107–08. And also like in this case, the homebuilder's insurer had previously filed a declaratory judgment action against the homebuilder seeking a declaration that its insurance policy did not cover the homeowners'

claims against the homebuilder. Notably, the *homeowners* were not parties to the declaratory judgment action, *unlike* the Sellerses in this case. *See McDaniel*, 84 So. 3d at 108.

The homebuilder's insurer obtained a default declaratory judgment of no coverage against the homebuilder and sought to give that judgment preclusive effect in the homeowners' subsequent action to collect their judgment from the homebuilder's insurer. *McDaniel*, 84 So. 3d at 111–12. But the court refused to bind the homeowners to the finding of no coverage in the declaratory judgment action because they were not parties to that action and because they were not privity *with the insured homebuilder*. *McDaniel*, 84 So. 3d at 112. The court pointed out that the insured homebuilder and the homeowners were not in privity because "there is not always the incentive on the part of the *insured* to vigorously contest the insurer's claims [of no coverage]." *McDaniel*, 84 So. 3d at 113 n.1 (quoting 17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 239.68 (3d ed. 2005)) (emphasis added).

But in this case, unlike in *McDaniel*, an *injured party* was present in the declaratory judgment action: the Sellerses. *See McDaniel*, 84 So. 3d at 112. And the Sellerses—unlike Durham, who defaulted in the declaratory judgment action—had *every incentive* to "vigorously contest" Nationwide's claim of no coverage. *See McDaniel*, 84 So. 3d at 113 n.1. Indeed, the bankruptcy court in Durham's bankruptcy case—a year and a half before Nationwide's summary judgment motion in the declaratory judgment action—allowed the Sellerses to proceed in their case against Durham "to the extent of available insurance benefits only." (Doc. 24 at 2 n.2 (quoting doc. 13-4)). And Sellers/Gardner seeks to establish in this case the same thing that the Sellerses sought to establish in the declaratory judgment action: that damage to the Sellerses' home caused by Durham's foundation "manifested" during the Nationwide policy period.

18

So Gardner "[had] his interests adequately represented by someone with the same interests who [was] a party" to the declaratory judgment action: the Sellerses. *See Jim Parker Bldg. Supply Co. v. G&S Glass & Supply Co.*, 69 So. 3d 124, 132 (Ala. 2011) (quoting *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir. 2004)). And Sellers/Gardner's arguments to the contrary fall flat. He largely argues that because Gardner brought his own personal cross-claims against Durham in the *underlying state court case* (i.e., not derivative of the Sellerses' claims), the Sellerses could not have adequately represented Gardner's interests in the *declaratory judgment action*. *See, e.g.*, (doc. 100 at 22–24).

But this argument fails because in the *declaratory judgment action*, the Sellerses and Gardner had identical interests: to establish that the damage to the home "manifested" during the policy period. Without such a finding, *neither* the Sellerses *nor* Gardner could recover under the Nationwide policy on *any* claim either of them had against Durham. To be sure, had Judge Greene found coverage in the declaratory judgment action, and had Gardner not assigned his cross-claims to the Sellerses, Gardner and the Sellerses may have had to subsequently litigate the issue of the allocation of damages between them out of the same policy proceeds. But Gardner's and the Sellerses' interests diverged, if at all, in the *underlying state court* action—not the declaratory judgment action where they both would have benefited equally from a finding of coverage.[3]

The court consequently determines that no reasonable factfinder could conclude that Gardner and the Sellerses are not in privity for preclusion purposes; so the court will give Judge

---

[3] The Sellerses likely produced enough evidence to create a genuine issue of material fact as to the "manifestation" issue in the declaratory judgment action. But when Judge Propst entered his final judgment adopting Judge Greene's Report and Recommendation on Nationwide's motion for summary judgment in the declaratory judgment action, Gardner's claims belonged to the Sellerses. So Sellers/Gardner should have sought recourse for Judge Greene's erroneous finding through an *appeal*, not through a separate lawsuit.

Greene's finding that the damage to the Sellerses' home did not "manifest" during the policy period preclusive effect in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

And now that Nationwide has established through issue preclusion that the damage to the Sellerses' home did not "manifest" during the policy period for purposes of *this case*, the court concludes that the Nationwide policy does not cover the damage Durham's faulty foundation caused the Sellerses' home. And because Durham is not covered under the Nationwide policy, Sellers/Gardner cannot collect his judgment against Durham from Nationwide under Ala. Code § 27-23-2. *See State Farm Mut. Auto. Ins. Co. v. Brown*, 894 So. 2d 643, 648 (Ala. 2004) (quoting *Maness v. Ala. Farm Bureau Mut. Cas. Inc. Co.*, 416 So. 2d 979, 981–82 (Ala. 1982), *declined to extend on other grounds by Woodall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369, 373 (Ala. 1995)) (emphasis added).

Finally, Sellers/Gardner asks the court to find Alabama's definition of privity through "virtual representation" unconstitutional pursuant to the holding of the United States Supreme Court in *Taylor v. Sturgell*, which abolished the use of "virtual representation" to find privity in *federal-question cases*. 553 U.S. 880, 904 (2008). But as one state court aptly put it, "in deciding *Taylor*, the Court was involved in developing the *federal* common law of preclusion, not imposing a single uniform rule of *res judicata*." *City of Chicago v. St John's United Church of Christ*, 935 N.E.2d 1158, 1168 (Ill. App. Ct. 2010) (citing *Taylor*, 553 U.S. at 891–93) (emphasis in original). And the Supreme Court in a prior preclusion case pointed out that "[s]tate courts are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 797 (1996) (citing *Postal Tel. Cable Co. v. Newport*, 247 U.S. 464, 475 (1918)).

To the extent Sellers/Gardner argues that this court's application of issue preclusion in this case denies him his right to due process of law under the Fourteenth Amendment of the United States Constitution, the court disagrees. *See Richards*, 517 U.S. at 797–98; *Taylor*, 553 U.S. at 891. Gardner had notice of Nationwide's suit; indeed, he assigned his claims to the Sellerses *three months* before Nationwide filed its motion for summary judgment in the declaratory judgment action. Gardner and the Sellerses were far from "mere 'strangers' to one another" during the declaratory judgment action. *Richards*, 517 U.S. at 802 (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).

This case simply does not represent an "extreme application[] of the doctrine of *res judicata*[.]" *Richards*, 517 U.S. at 797. Instead, this court's application of issue preclusion in this case advances the primary policies underlying the doctrine: "[b]y precluding parties from contesting matters that they have had a full and fair opportunity to litigate, [the doctrine] protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)) (internal alterations and quotation marks omitted).

## IV.   Conclusion

Because Gardner and the Sellerses are in "privity" for preclusion purposes, Nationwide has established all four elements of issue preclusion under Alabama law. *See Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990). Accordingly, Sellers/Gardner is precluded from relitigating the issue of when the damage to the Sellerses' home "manifested" under Durham's Nationwide policy in this case.

Because the court will give preclusive effect to Judge Greene's factual finding that the damage to the Sellerses' home did not "manifest" during the Nationwide policy period, the court finds that Sellers/Gardner cannot recover his judgment against Durham from Nationwide.

Accordingly, the court will **GRANT** Nationwide's motion for summary judgment (doc. 98) and will **ENTER SUMMARY JUDGMENT** in favor of Nationwide and against Sellers/Gardner on his claim against Nationwide under Ala. Code § 27-23-2.

The court will enter an Order to the above effect contemporaneously with this Opinion.

**DONE** and **ORDERED** this 20th day of July, 2021.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE